**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-02937-NYW-STV

DEMARCO WHITE,

      Plaintiff,

v.

JESSE BALDRIDGE,
TAYLOR CAMP, and
TERRY JAQUES,

      Defendants.

---

## ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION

---

This matter is before the Court on the Recommendation of United States Magistrate Judge Scott T. Varholak entered on November 8, 2022, [Doc. 81], Plaintiff's Objection to Magistrate[] [Judge's] Recommendation, [Doc. 84], and the "Judicial Complaint" filed on November 7, 2022, [Doc. 77], which the Court construes as a Rule 72(a) Objection to Judge Varholak's rulings at the October 13, 2022 Status Conference.  [Doc. 73].  For the reasons set forth below, Plaintiff's Objections are respectfully **OVERRULED** and the Recommendation is **ADOPTED**.

## LEGAL STANDARDS

### I.    Rule 72(a)

When a magistrate judge issues an order on a non-dispositive matter, "[a] party may serve and file objections to the order within 14 days after being served with a copy."  Fed. R. Civ. P. 72(a).  "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  *Id.*  Under this standard of review, a magistrate judge's finding should not be rejected merely because the district court would have

decided the matter differently.  *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985).

A district court must affirm a magistrate judge's decision unless "on the entire evidence," the

district court "is left with the definite and firm conviction that a mistake has been committed."

*Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quotation omitted).

## II.      Rule 72(b)

A district court may refer a dispositive motion to a magistrate judge for recommendation.

28 U.S.C. § 636(b)(1)(B).  The district court "must determine de novo any part of the magistrate

judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  "[A] party's

objections to the magistrate judge's report and recommendation must be both timely and specific

to preserve an issue for de novo review by the district court or for appellate review."  *United States

v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Such specific objections permit

"the district judge to focus attention on those issues—factual and legal—that are at the heart of the

parties' dispute."  *Id.* at 1059.

## III.     Dismissal Under Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6),

the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations

in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir.

2010).  The plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that even pro se

litigants cannot rely on conclusory, unsubstantiated allegations to survive a 12(b)(6) motion).

# BACKGROUND

The factual and procedural background of this case is set forth in Judge Varholak's Recommendation, *see* [Doc. 81 at 1–4], and the Court discusses this background here only as necessary for purposes of this Order.  Plaintiff Demarco White ("Plaintiff" or "Mr. White") initiated this action on November 1, 2021, *see* [Doc. 1], and filed a Second Amended Prisoner Complaint on March 14, 2022, naming three Defendants in this matter—Jesse Baldridge, Taylor Camp, and Terry Jaques—all of whom are alleged to be employees of the Colorado Department of Corrections ("CDOC").  [Doc. 11 at 2–3].

## I.    Factual Background

At the time of the events giving rise to this cause of action, Mr. White was incarcerated within the CDOC at the Limon Correctional Facility ("LCF").  [*Id.* at 8].[1]  Plaintiff alleges that Defendants Baldridge and Camp entered his cell because Plaintiff required medical attention.  [*Id.*].  Plaintiff was "unresponsive, uncombative, [and] incoherent."  [*Id.*].  Plaintiff alleges that Defendant Camp "intentionally and unnecessarily[,] with [a] sadistic state of mind and with total disregard for the Plaintiff's medical condition and pulmonary condition," administered pepper spray to Plaintiff, which caused "[a]sphyxiation, pain and suffering, and undetermine[d] damage to the Plaintiff's pulmonary condition."  [*Id.*].

In addition, Mr. White alleges that Defendant Baldridge then grabbed and twisted Plaintiff's body and arm, forcing and "slamming" his body to the floor, despite Plaintiff's uncombative state.  [*Id.* at 9].  Defendant Baldridge's actions caused Plaintiff "extreme pain and injury" and "a herniated dis[c] requiring surgery."  [*Id.* at 4].  Mr. White alleges that Defendants

---

[1] For purposes of clarity, the Court cites to the page numbers generated by the Electronic Case Filing ("ECF") system for the United States District Court for the District of Colorado.

Baldridge and Camp acted pursuant to official LCF policies implemented by Defendant Terry Jaques, the LCF Warden.  [*Id.* at 1, 6].

In his Second Amended Complaint, Plaintiff asserts one claim for relief under 42 U.S.C. § 1983 based on a violation of his Eighth Amendment right to be free from cruel and unusual punishment.  [*Id.* at 5].  Plaintiff seeks (1) compensatory and punitive damages; (2) "injunctive relief in the form of a[n] order directing the defendants to provide adequate medical" treatment to Plaintiff; and (3) "prospective injunctive relief prohibiting the defendants" from using pepper-spray on Plaintiff.  [*Id.* at 12, 14–15].

## II.    Service on Defendants

On April 8, 2022, the CDOC returned a waiver of service as to Defendant Jaques, [Doc. 17], but also informed the Court that Defendants Baldridge and Camp no longer worked for the CDOC.  [Doc. 18].  The CDOC provided these Defendants' last known residential contact information to the Court for service of process.  [*Id.* at 1].

Based on the CDOC's representations, this Court *sua sponte* ordered the United States Marshals Service ("USMS") to "attempt service on Defendants Baldridge and Camp at the addresses provided for these Defendants" by the CDOC.  [Doc. 19 at 1].[2]  The USMS attempted service on these Defendants, and in June 2022, summonses were returned unexecuted as to both Defendants Camp and Baldridge.  [Doc. 38; Doc. 40].  The process receipt for Defendant Baldridge indicated that Defendant Baldridge had moved from the address provided by the CDOC in February 2022.  [Doc. 39 at 2].  Similarly, the process receipt for Defendant Camp stated that he

---

[2] At the time this Court issued this Minute Order, the undersigned was assigned to this case in the referral capacity as a United States Magistrate Judge.  *See* [Doc. 24].  The case was later re-assigned to the undersigned upon her appointment as a United States District Judge.  [Doc. 50].

had moved in December 2021.  [Doc. 37 at 2].  Thus, service was not successful on Defendants Baldridge and Camp.

On September 12, 2022, Plaintiff filed a "Motion for the Court to Direct the United States Marshal's [sic] Service to Effect Service on Defendants Baldbridge [sic] and Camp."  [Doc. 61]. In that Motion, Plaintiff stated that he "believe[d] that when the U.S. Marshal's service was unable to serve the defendants at the CDOC, it stopped trying to get the defendants served," and he "mov[ed] the Court to issue its ORDER directing the U.S. Marshal's service to effect service of these two defendants."  [*Id.* at ¶¶ 6–7].  Judge Varholak denied the Motion, stating that "the Court is not responsible for lack of service where a plaintiff does not provide correct information required for service."  [Doc. 63 (citing *Pemberton v. Patton*, 673 F. App'x 860, 864 (10th Cir. 2016))]. Judge Varholak informed Plaintiff of his right to object to that ruling under Rule 72(a).  *See* [*id.*]. Plaintiff did not object to that ruling.

On October 13, 2022, Judge Varholak held a Status Conference in this case.  He informed Plaintiff that if he wished to proceed on his claims against Defendants Baldridge and Camp, he would need to serve those Defendants.  [Doc. 73 at 1].  Plaintiff made an oral motion for an extension of time to complete service on these Defendants, which was granted; Judge Varholak granted Plaintiff an additional 60 days to serve Defendants Baldridge and Camp, through December 12, 2022.  [*Id.*].

Plaintiff subsequently filed his "Judicial Complaint."  [Doc. 77].  Therein, he states that "[f]or whatever reason, the District Court refuses to compel the United States Marshal's service to effect service and serve two of the defendants in this case."  [*Id.* at 1].  He states that "[t]hey have told me on several occasions that it is in fact my responsibility to effect service on these defendants," but asserts that pursuant to 28 U.S.C. § 1915, a litigant proceeding in forma pauperis

5

is entitled to assistance from the USMS in completing service. [*Id.*]. He further states that he "ha[s] reason to believe" that the CDOC's representation that Defendants Baldridge and Camp no longer work at the CDOC "is simply not true, and that at least one of the defendants still works at that facility." [*Id.*]. The Court construes this submission as an Objection to Judge Varholak's rulings at the October 13, 2022 Status Conference.

### III.   The Motion to Dismiss and Recommendation

On June 27, 2022, Defendant Jacques filed a Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) & 12(b)(6) (the "Motion to Dismiss"), which seeks dismissal of Plaintiff's claim against him. [Doc. 29]. Judge Varholak issued the pending Recommendation on November 8, 2022, recommending that the Motion to Dismiss be granted in its entirety. [Doc. 81]. Relevant here, Judge Varholak first concluded that Plaintiff's claims for injunctive relief are moot because Plaintiff "is no longer housed at LCF, where Defendant [Jaques] is employed," and Plaintiff "does not demonstrate a reasonable expectation that he will be transferred back to [LCF] and be subject to the alleged conduct again." [*Id.* at 7–8]. Judge Varholak further noted that a court lacks subject matter jurisdiction over claims that are moot. [*Id.*]. For this reason, he recommends that the Motion to Dismiss be granted with respect to Plaintiff's claims for injunctive relief against Defendant Jaques, [*id.* at 8], and *sua sponte* recommends that any claims for injunctive relief against Defendants Baldridge and Camp be dismissed without prejudice, too. [*Id.* at 9].[3]

Then, Judge Varholak determined that to the extent Plaintiff seeks money damages against Defendant Jaques in his official capacity, that claim is barred under the Eleventh Amendment. [*Id.* at 10]. Based on this same reasoning, Judge Varholak *sua sponte* recommends that Plaintiff's

---

[3] Judge Varholak noted that these Defendants' apparent separation from the CDOC provides another basis for concluding that Plaintiff's request for injunctive relief is moot. [Doc. 81 at 9 n.10].

claims for money damages against Defendants Baldridge and Camp in their official capacities be dismissed without prejudice. [*Id.* at 11]. And finally, Judge Varholak concluded that Plaintiff failed to state an individual-capacity claim against Defendant Jaques because he failed to allege Defendant Jaques's personal participation in the alleged constitutional violation or sufficient facts to establish Defendant Jaques's supervisory liability in this case. [*Id.* at 11–18]. Accordingly, Judge Varholak recommends that the Motion to Dismiss be granted to the extent it seeks dismissal of Plaintiff's claim against Defendant Jaques in his individual capacity, and that this claim be dismissed without prejudice under Rule 12(b)(6). [*Id.* at 18].

Judge Varholak further recommends, however, that if this Court adopts the Recommendation, that Plaintiff be granted leave to file an amended pleading within 21 days of the date of the Court's Order and "that Plaintiff be instructed that his failure to do so will result in the dismissal of this action against Defendant Jaques." [*Id.* at 19]. Judge Varholak advised the Parties that they could object to the Recommendation within 14 days of its service. [*Id.* at 19 n.16]. Defendant Jacques did not object to the Recommendation.

Mr. White filed Objections to the Recommendation on November 21, 2022. [Doc. 84]. He raises objections with respect to: (1) Judge Varholak's statement that Defendants Baldridge and Camp have not yet been served, [*id.* at 5]; (2) Judge Varholak's "refus[al] to assist with service in this case," [*id.*]; (3) the fact that Judge Varholak "[did] not cite any examples" to support his conclusion that Plaintiff has failed to allege "primary material facts," [*id.* at 5–6]; (4) Judge Varholak's conclusion that Plaintiff's request for injunctive relief is moot, [*id.* at 7]; (5) Judge Varholak's *sua sponte* recommendation that Plaintiff's official capacity claims for money damages against Defendants Baldridge and Camp be dismissed, [*id.* at 8]; and (6) Judge Varholak's

conclusion that Plaintiff failed to allege facts demonstrating Defendant Jaques's personal participation in the assault or supervisory liability.  [*Id.* at 8–9].

## ANALYSIS

### I.   Service on Defendants Baldridge and Camp

The Court first addresses Mr. White's objection that Judge Varholak and/or this Court "has refused to assist with service in this case," which is made both under Rule 72(a), with respect to Judge Varholak's non-dispositive rulings, and under Rule 72(b), with respect to the Recommendation.  [Doc. 84 at 5]; *see also* [Doc. 77 at 1 (Plaintiff arguing that "the District Court refuses to compel the [USMS] to effect service and serve two of the defendants in this case")].[4] Plaintiff suggests that it is the Court's responsibility to effect service on Defendants Baldridge and Camp and its failure to do so is erroneous.  [Doc. 84 at 5; Doc. 77 at 1].

Mr. White is correct that when a plaintiff is granted leave to proceed *in forma pauperis*, "[t]he officers of the court shall issue and serve all process, and perform all duties in [*in forma pauperis*] cases."  28 U.S.C. § 1915(d); *see also* Fed. R. Civ. P. 4(c)(2) (the appointment of a United States marshal or other officer to perfect service "must" be made when the plaintiff is authorized to proceed *in forma pauperis* under 28 U.S.C. § 1915).  But as previously explained to Plaintiff, *see* [Doc. 63], "[i]t is the Plaintiff's responsibility to provide the United States Marshal with the address of the person to be served."  *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007) (emphasis added).  "[T]he Marshal is not charged with finding a defendant

---

[4] Plaintiff failed to object to Judge Varholak's order denying the "Motion for the Court to Direct the United States Marshal's [sic] Service to Effect Service on Defendants Baldridge [sic] and Camp," [Doc. 61], and thus, this objection is arguably waived.  *See Sinclair Wyo. Refin. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (finding firm waiver rule applicable when a party fails to object to a magistrate judge's non-dispositive ruling under Rule 72(a)).  In the interests of justice, the Court will address Plaintiff's objection here.

who has moved without providing an accessible forwarding address." *Id.* (emphasis added); *see also Pemberton*, 673 F. App'x at 864 ("[T]he Marshals service is not responsible for lack of service where a plaintiff does not provide correct information required for service.").

In other words, while the USMS will attempt service on behalf of a plaintiff proceeding *in forma pauperis* at an address provided by the plaintiff, it is not the USMS's responsibility to track down viable addresses for the defendants; that responsibility is the plaintiff's. *Fields*, 511 F.3d at 1113. Indeed, the USMS did attempt service on Defendants Baldridge and Camp at the last-known addresses of these Defendants provided by the CDOC, but the summonses were returned unexecuted. [Doc. 38; Doc. 40]. Accordingly, the Court finds no error in Judge Varholak's statements that it remains Plaintiff's responsibility to provide correct contact information for the USMS to effect service. Plaintiff's objections with respect to the unsuccessful attempts of service by the USMS are therefore **OVERRULED**.

After Plaintiff filed his objections, a summons was returned executed as to Defendant Baldridge, reflecting service from a private process server. *See* [Doc. 85]. In addition, Mr. White filed a "Motion [for] Exten[s]ion of Time to Serve or Order to Substitute Serve Via Certified Mail" (the "Motion for Extension of Time"). [Doc. 86]. In the Motion for Extension of Time, Plaintiff represents that he has identified a potential address for Defendant Camp located in Columbus, Ohio, and that three attempts at service on Defendant Camp at the Ohio address were unsuccessful. [*Id.* at 1–2]. According to Plaintiff, on December 10, 2022, an individual answered the door and confirmed that Defendant Camp resides at that address, but stated that Defendant Camp would be out of town until the end of the next week. [*Id.* at 2]. Mr. White states that "[d]ue to the possibility of avoiding service and [Defendant Camp] being out of town until December 16th, substitute

service by certified mail would be ideal.  If not, an extension to attempt personal service is requested."  [*Id.*].

The Motion for Extension of Time will be **GRANTED in part**.  Given the apparent confirmation that Defendant Camp does reside at the Ohio address located by Plaintiff, Plaintiff's deadline to serve Defendant Camp is **EXTENDED** to **January 31, 2023**.  While the Court understands Mr. White's concerns about Defendant Camp potentially avoiding service, the Court notes that it is only when "service of process by personal service <u>cannot be accomplished</u>" that "other means of service may be used."  *United States v. Elsberg*, No. 08-cv-00552-MSK-KLM, 2010 WL 5177439, at *3 (D. Colo. Aug. 17, 2010) (emphasis added).  The Court is not convinced that personal service on Defendant Camp cannot be accomplished at this juncture.

In addition, while Mr. White moves for service by certified mail, this method of service does not appear to be available in this case.  "The federal rules are silent regarding substituted and alternative service.  Where federal rules are silent 'as to a specific procedural requirement,' the deciding court's local rules control."  *Two Rivers Water & Farming Co. v. Am. 2030 Cap. Ltd.*, No. 19-cv-01640-CMA-STV, 2019 WL 5535227, at *2 (D. Colo. Oct. 25, 2019) (quoting *Hammond v. City of Junction City*, No. 00-2146-JWL, 2002 WL 169370, at *9 (D. Kan. Jan. 23, 2002)).  Under Colorado law, the default method of service is "<u>personal</u> service," which includes leaving the complaint and summons at the defendant's normal place of abode with a person who is at least 18 years of age and a family member of defendant, or at the defendant's workplace with the defendant's supervisor, secretary, administrative assistant, bookkeeper, human resources representative, or managing agent.  *See* Colo. R. Civ. P. 4(e)(1) (emphasis added)).  While Rule 4(g) of the Colorado Rules of Civil Procedure permits service by mail, it does so only in limited circumstances: "service by mail or publication shall be allowed only in actions affecting specific

property or status or other proceedings in rem." Colo. R. Civ. P. 4(g). Thus, service by certified mail is not permitted by the applicable procedural rules in this case.[5]

## II.    The Motion to Dismiss

### A.    Injunctive Relief

The Court first addresses Plaintiff's objection to Judge Varholak's conclusion that Plaintiff's claims for injunctive relief are moot. [Doc. 84 at 6–7]. Plaintiff argues that "[w]hile [he] concedes that his movement from LCF, to [Fremont Correctional Facility], and then to [Arkansas Valley Correctional Facility] does render the first request for injunctive relief moot, which prohibits these named defendants from themselves spraying [him] in the future, what it does not render moot is for the same action to be perpetrated by another CDOC staff member." [Id.]. He states that as long as he is incarcerated, he will be at risk of being pepper-sprayed by a CDOC official, and for this reason, his request is not moot. [Id. at 7].[6] Plaintiff did not raise this argument

---

[5] If personal service is unable to be effectuated, a party "may file a motion, supported by an affidavit of the person attempting service, for an order for substituted service." Colo. R. Civ. P. 4(f). The motion must set forth "(1) the efforts made to obtain personal service and the reason why personal service could not be obtained, (2) the identity of the person to whom the party wishes to deliver the process, and (3) the address, or the last known address of the workplace and residence, if known, of the party upon whom service is to be effected." *Id.*

[6] Mr. White also asserts that, with respect to his second request for injunctive relief, which requests an injunction directing Defendants to provide him adequate medical care, *see* [Doc. 11 at 15], "[c]ommon sense and basic humanity would cause any normal minded jurist to agree with the premise that the actions of the defendants here were not only so illegal, unconstitutional, but [also] morally bankrupt," but "if we are to follow the recommendation of the Magistrate [Judge], the CDOC should not be held to a standard anywhere close to that. They should just be given a pass for what has transpired." [Doc. 84 at 7]. Plaintiff concludes that "[t]he Court does not lack jurisdiction with regard to this form of relief." [Id.]. However, Plaintiff does not identify any specific portion of the Recommendation that he believes is legal error. *See generally* [id.]. Objections "must be both timely <u>and specific</u> to preserve an issue for de novo review by the district court." *One Parcel of Real Prop.*, 73 F.3d at 1060 (emphasis added). An objection is specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.* at 1059. Because Mr. White does not focus the Court's attention on any *specific legal issues* in the Recommendation, the Court finds this objection insufficiently

in response to the Motion to Dismiss, *see* [Doc. 58 at 6–7], and thus, this argument has been waived. *See Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1130 (D. Colo. 2019). Despite the waiver, however, the Court concludes that there is no error in Judge Varholak's Recommendation.

"When a prisoner files suit against prison officials who work in the institution in which he is incarcerated, seeking . . . injunctive relief on the basis of alleged wrongful conduct by those officials, and then that prisoner is subsequently transferred to another prison . . ., courts are presented with a question of possible mootness." *Jordan v. Sosa*, 654 F.3d 1012, 1027 (10th Cir. 2011). Where the prisoner's claims relate solely to the conditions of confinement at the facility at which he was previously housed, the Court is unable to provide the prisoner with effective relief, *id.*, unless the prisoner "brings a lawsuit challenging policies that apply in a generally uniform fashion throughout a prison system." *Id.* at 1028. In that instance, the Court focuses on whether the inmate has sued defendants "who [are] actually situated to effectuate any prospective relief that the courts might see fit to grant"—i.e., the director of the prison system or the prison system itself. *Id.* But where a plaintiff has sued only prison officials at the transferor facility, the plaintiff's claims for injunctive relief are moot even if they seek to challenge system-wide prison policies. *Id.* at 1028–29.

Here, Mr. White has not sued the director of the CDOC or the CDOC itself, instead suing only individual Defendants employed (or previously employed) at LCF. *See* [Doc. 11 at 1]. Mr. White does not allege in his Second Amended Complaint that Defendant Camp sprayed him with pepper-spray pursuant to CDOC-wide policies or procedures; rather, he alleges that "Defendant

---

specific to preserve it for de novo review. For the reasons explained in Section II.A., the Court finds no error in Judge Varholak's analysis.

[Jaques's] personal participation in this action is based upon the creation of the policy and custom of Limon Correctional Facility officers['] use of oleoresin capsicum agent upon offenders who[] are experiencing medical emergencies." [*Id.* at 9]. Nor does Mr. White allege that he is subject to this same policy of using pepper-spray on inmates experiencing medical emergencies at his current facility. *See generally* [*id.*].[7] In other words, Mr. White "has not sued defendants who are actually situated to effect any prospective relief that this court might afford him." *Jordan*, 654 F.3d at 1030. The Court thus finds no error in and agrees with Judge Varholak's conclusion that Plaintiff's claims for injunctive relief are moot. Plaintiff's objections with respect to his claims for injunctive relief are therefore **OVERRULED**.

### B.     Plaintiff's Official Capacity Claims

Next, Mr. White challenges Judge Varholak's *sua sponte* recommendation that the Court dismiss Plaintiff's official capacity claims against Defendants Baldridge and Camp, insofar as those claims seek money damages. [Doc. 84 at 8]. However, Mr. White does not identify any specific portion of the Recommendation that he believes is erroneous. *See* [*id.*]. Instead, he suggests that Judge Varholak is "litigating [Defendants'] defense and making legal arguments on their behalf" and that it is "not his job, nor his duty to act as a litigator in chief for the defendants." [*Id.*].

"Because Eleventh Amendment immunity is jurisdictional, the Court may consider it *sua sponte*." *Jud. Watch, Inc. v. Griswold*, 554 F. Supp. 3d 1091, 1100 n.6 (D. Colo. 2021); *see also Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017) (the Tenth Circuit Court of Appeals raising

---

[7] Although Mr. White states in his objections that the challenged actions could "be perpetrated by another CDOC staff member" and "[a]s long as he is incarcerated he will be subject to that risk," [Doc. 84 at 7], "Plaintiff cannot amend his Complaint through filings in opposition to [a] motion[] to dismiss or through objections in opposition to the Recommendation." *Wilson v. Jenks*, No. 12-cv-02495-RM-KMT, 2014 WL 6515336, at *4 (D. Colo. Nov. 20, 2014).

Eleventh Amendment immunity *sua sponte*).  Courts in this District raise this jurisdictional issue *sua sponte* with some frequency.  *See, e.g.*, *Bueno v. Chekush*, 355 F. Supp. 3d 987, 997 (D. Colo. 2018); *Doe v. Univ. of Colo.*, 255 F. Supp. 3d 1064, 1086 (D. Colo. 2017).  The Court is thus not persuaded by Mr. White's argument that Judge Varholak's *sua sponte* recommendation was erroneous.  Accordingly, Plaintiff's objections suggesting error here are **OVERRULED**.

### C.    The Sufficiency of Plaintiff's Allegations

Finally, the Court considers Plaintiff's objections to Judge Varholak's conclusions as to the sufficiency of his allegations.

***Footnote 5***.   First, Plaintiff asserts that, in footnote 5 of the Recommendation, Judge Varholak "insinuates" that Plaintiff "failed to allege primary material facts, and that the Court was unable to draw an[y] reasonable conclusions with regard to the Plaintiff failing to properly state a claim."  [Doc. 84 at 5].  Mr. White posits that this is "problematic" because Judge Varholak "does not cite any examples" of the type of allegations Judge Varholak deemed deficient.  [*Id.* at 5–6].

Footnote 5 states, in full:

> The events leading up to Plaintiff's injury are not clear from the Complaint. Plaintiff adds significant factual allegations and context in his response to the Motion, which help clarify the sequence of events.  In its evaluation of a motion to dismiss, however, the Court may not consider facts alleged for the first time in a response to a motion.  *In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) (A plaintiff "may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss.").

[Doc. 81 at 2 n.5 (citations to case filings omitted)].

The Court finds no error here.  This footnote was appended to Judge Varholak's reiteration of the facts giving rise to this case—specifically, the statement that "[o]n January 24, 2021, Officers Jesse Baldridge and Taylor Camp entered Plaintiff's cell in response to Plaintiff requiring medical attention."  [*Id.* at 2 (footnotes omitted)].  This footnote merely explains that Plaintiff's

Second Amended Complaint did not clearly set forth why Plaintiff needed medical attention on January 24, 2021, *see, e.g.*, [Doc. 11 at 5], and while Plaintiff provided additional context in his Response to the Motion to Dismiss, *see, e.g.*, [Doc. 58 at 3], Judge Varholak could not consider those new facts in his Recommendation. *See In re Qwest*, 396 F. Supp. 2d at 1203. But importantly, Judge Varholak's statement that Plaintiff's Second Amended Complaint lacked background context with respect to Plaintiff's medical condition did not form the basis for any of his conclusions throughout the Recommendation. *See generally* [Doc. 81]. Accordingly, there can be no legal error here. Plaintiff's objections to footnote 5 are thus **OVERRULED**.

    ***Personal Participation and Supervisory Liability***. Finally, Mr. White objects to Judge Varholak's conclusion that his allegations are insufficient to state a claim against Defendant Jaques in his individual capacity. *See* [Doc. 84 at 8–9]. "A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability." *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011). Personal liability is based on the defendant's personal involvement in the alleged constitutional violation, while supervisory liability "allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, or implements a policy which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the Constitution." *Id.* (alteration marks omitted).

    Mr. White alleges in the Second Amended Complaint that Defendant Jaques "is being sued due to his personal parti[c]ipation in the creation of policy, practice and customs of Limon Correctional Facility." [Doc. 11 at 9]. There are no allegations that Defendant Jaques personally participated in the handcuffing or pepper-spraying of Plaintiff. *See* [*id.*]. Based on this lack of allegations demonstrating Defendant Jaques's personal participation, Judge Varholak "interpret[ed] Plaintiff's claim as alleging supervisory liability only on the theory that Defendant

15

promulgated, created, implemented or possessed responsibility for the continued operation of a policy." [Doc. 81 at 13]; *Davis v. City of Aurora*, 705 F. Supp. 2d 1243, 1263 (D. Colo. 2010) ("[T]he establishment or utilization of an unconstitutional policy or custom can serve as the supervisor's 'affirmative link' to the constitutional violation.").

Mr. White first objects to Judge Varholak's determination that Plaintiff has failed to allege sufficient facts demonstrating Defendant Jaques's personal participation in any constitutional violation. [Doc. 84 at 8]. He argues that he should be permitted to participate in discovery, at which point the Court can "make a decision as to the existence of any relevant evidence and personal participation." [*Id.* at 9]. He states that he "has a constitutional right to due process," and "[p]art of that due process is being able to develop his claims, in a court of law, against those who wronged him." [*Id.*].[8] Mr. White did not argue in his Response that he should be permitted to participate in discovery prior to a ruling on the Motion to Dismiss. [Doc. 58 at 8–10]. Thus, this argument is waived. *Gilbert*, 423 F. Supp. 3d at 1130. Nevertheless, the Court will briefly address Mr. White's objection.

"A motion to dismiss is a request to dismiss a case before discovery has taken place and thus permits only an assessment whether a complaint is sufficient on its face." *Lymon v. Aramark Corp.*, 728 F. Supp. 2d 1207, 1215 (D.N.M. 2010), *aff'd*, 499 F. App'x 771 (10th Cir. 2012). "While [a] complaint need not contain sufficient evidence to prove their claim, [the plaintiff] cannot file an inadequate complaint and then use the discovery process to develop a factual basis for their claims in the first instance." *Vincent v. Utah Plastic Surgery Soc.*, 621 F. App'x 546, 550 n.7 (10th Cir. 2015). The Court understands that Plaintiff, as an incarcerated litigant, may lack the

---

[8] Mr. White also raises an objection related to service on Defendants Baldridge and Camp, *see* [Doc. 84 at 8–9], which the Court has addressed above in Section I.

16

ability to plead specific, detailed facts without discovery, but also notes that Mr. White, as the alleged victim in this case, was present when Defendants Baldridge and Camp allegedly handcuffed and pepper-sprayed him, and thus, would presumably have knowledge of any participation in that conduct by Defendant Jaques. Importantly, a motion to dismiss "addresses the adequacy of the allegations of the Amended Complaint, not the sufficiency of latter developed evidence." *Toney v. Berkebile*, No. 13-cv-00111-RM-NYW, 2015 WL 1217680, at *5 (D. Colo. Mar. 13, 2015). And in his objections, "Plaintiff does not even attempt to defend the adequacy of his pleadings." *Id.*; *see also* [Doc. 84 at 9–10]. Accordingly, Plaintiff's objections with respect to discovery are **OVERRULED**.

In the alternative, Mr. White takes issue with Judge Varholak's conclusion that Plaintiff's allegations are insufficient to establish supervisory liability with respect to Defendant Jaques. [Doc. 84 at 9]. He notes that Defendant Jaques is the Warden of LCF and asserts that "[i]t is insulting to insinuate that anyone who has any knowledge of criminal justice/ corrections[] is unaware of the fact that the WARDEN is the supervisor in chief of a prison." [*Id.*]. He states that the "mere failure by a municipality or supervisor has set forth a myriad of causes of actions in a number of § 1983 civil rights actions." [*Id.*]. He further asserts that "it defies logic when the crux of his allegations against the Warden were that he had personal involvement [on a] number of levels, and yet the Magistrate [Judge] want[s] to argue that[] those allegations are both not proof, nor are they enough, yet all the case law from the U.S. Supreme Court says the opposite." [*Id.* at 10].

To state a claim based on supervisory liability, Plaintiff must allege that (1) Defendant Jaques "promulgated or was responsible for a policy that (2) caused the constitutional harm and (3) acted with the state of mind required to establish the alleged constitutional deprivation."

*Brown*, 662 F.3d at 1165–66.  Judge Varholak concluded that Mr. White failed to allege facts supporting any of these three elements.  [Doc. 81 at 14–18].  Mr. White's objections are somewhat unclear, but because Mr. White references Defendant Jaques's knowledge of the alleged constitutional violation, the Court construes Mr. White's objections as challenging only Judge Varholak's conclusion as to the third element.  *See One Parcel of Real Prop.*, 73 F.3d at 1060 (objections must be specific to preserve the objection for de novo review).

The third element of supervisory liability "requires the plaintiff to show that the defendant took the alleged actions with the requisite state of mind.  Precisely what state of mind is required for individual liability depends on the type of claim a plaintiff brings."  *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).  "[A] § 1983 plaintiff alleging an Eighth Amendment violation must prove that the defendant acted with deliberate indifference."  *Keith v. Koerner*, 843 F.3d 833, 847–48 (10th Cir. 2016).  To adequately plead deliberate indifference, Plaintiff must allege that (1) Defendant Jaques "was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed"; (2) that Defendant Jaques "actually drew that inference"; and (3) that Defendant Jaques "was aware of and failed to take reasonable steps to alleviate that risk."  *Perry v. Durborow*, 892 F.3d 1116, 1122 (10th Cir. 2018) (quotation, alteration marks, and footnote omitted).

As recognized by Judge Varholak, *see* [Doc. 81 at 17], Mr. White does not allege any *facts* supporting these elements.  Rather, he alleges that Defendant Jaques

> knew of the problem with the practice, policy or custom which defendants [Camp and Baldridge] used to intentionally [and] sadistically cause the pain[,] injuries[,] and suffering of the Plaintiff.  On January 24, 2021,  Defendant [Jaques] failed to correct and supervise any change in the policy[,] practice[,] or custom which resulted in the injuries and damage to the Plaintiff's person.

[Doc. 11 at 9–10]. The Court respectfully finds these allegations to be "formulaic recitation of the elements of a cause of action," which are insufficient to survive a motion to dismiss under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). While Mr. White encourages the Court to assume that Defendant Jaques had the requisite knowledge simply due to his position as the LCF Warden, the Court cannot "assume the existence of facts not alleged." *Yunker v. Dep't of Air Force*, No. CIV-09-1079-D, 2009 WL 3614448, at *1 (W.D. Okla. Oct. 30, 2009).

The Court agrees with Judge Varholak's conclusion that Plaintiff's allegations are insufficient to state a claim against Defendant Jaques on a supervisory theory of liability. Accordingly, Plaintiff's objections are **OVERRULED**.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)    Plaintiff's Objections [Doc. 77; Doc. 84] are **OVERRULED**;

(2)     The Recommendation of United States Magistrate Judge Scott T. Varholak [Doc. 81] is **ADOPTED**;

(3)    Defendant Terry Jaques' Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) & 12(b)(6) [Doc. 29] is **GRANTED**;

(4)    Plaintiff's claims against Defendant Jaques are **DISMISSED without prejudice** under Rules 12(b)(1) and 12(b)(6);

(5)    Plaintiff's claims against Defendant Baldridge and Camp seeking injunctive relief are *sua sponte* **DISMISSED without prejudice** under Rule 12(b)(1);

(6)    Plaintiff's claims against Defendant Baldridge and Camp in their official capacities, to the extent they seek money damages, are *sua sponte* **DISMISSED without prejudice** under Rule 12(b)(1);

19

(7)     Plaintiff is **GRANTED LEAVE** to file a Third Amended Complaint within **21 days** from the date of this Order.  <u>**Plaintiff's is ADVISED that his failure to do so may result in dismissal of his claims against Defendant Jaques without prejudice**</u>;

(8)     Plaintiff's Motion [for] Exten[s]ion of Time to Serve or Order to Substitute Serve Via Certified Mail [Doc. 86] is **GRANTED in part**;

(9)     Plaintiff's deadline to serve Defendant Camp is **EXTENDED** to **January 31, 2023**;[9]

(10)    <u>**No further extensions of this deadline will be granted absent extraordinary circumstances**</u>;

(11)    <u>**Plaintiff is ADVISED that the failure to serve Defendant Camp by January 31, 2023 may result in the Court dismissing his remaining claims against Defendant Camp without prejudice under Federal Rule of Civil Procedure 4(m)**</u>; and

(12)    A copy of this Order, marked as legal mail, shall be sent to:

> Demarco White, #122323
> Arkansas Valley Correctional Facility (AVCF)
> 12750 Highway 96 at Lane 13
> Ordway, CO 81034

DATED:  December 19, 2022                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge

---

[9] To the extent that Plaintiff files a Third Amended Complaint with the Court before he is able to serve Defendant Camp, Plaintiff should serve Defendant Camp with the Third Amended Complaint.